May it please the Court, Deborah Prosser, Burke, Lames, and Sorensen, with my colleagues Timothy Irons and Amy Morgan on behalf of the City of Portland. Good morning. We'd like to reserve five minutes for rebuttal. Okay. Good morning, Your Honors. There has been mining for 30 years at this site, and that mine peacefully coexisted with the entire community in the north region of L.A. The mine that's the subject of this consent decree is going to create one additional truck trip approximately every minute, 24 hours a day, seven days a week. This is interesting, and I saw it in your briefs, but the county settled that claim. The county is the agency that under state law is charged with administration of these laws, and we have a consent decree. They were sued, and they settled. What are we doing? We understand that settlement agreements normally are good things that resolve litigation and are hard to challenge. Well, they're more than that. They conclusively resolve litigation. This is a consent decree that is going to have the effect of binding third parties, and that under the DeNova review is forwarded. And that's always the case. The world gets affected by all lawsuits. What I don't understand, since the county is the agency that has control of these claims, where the city of Santa Clarita gets authority to challenge its decision to settle the lawsuit. I don't understand what you're doing here. Well, first of all, the Ninth Circuit gave us the standing. If the court is raising a standing issue in the prior decision — You had standing. You were given standing to participate. But now, at the time, those claims were not settled. They were open claims. But since that time, the county, which was a defendant in the case, and the agency that's charged with administering the state environmental laws, has settled those claims. They said, we give up, for whatever reason. Yes. They cannot aggregate state law in that consent decree, and that's what they're doing. Why not? Why not? Because that's contrary to law, Your Honor, under the Keith v. Volpe case. If you get sued personally, and you go to court, and then you enter a settlement, you can enter a settlement on whatever terms you want to. The county is the agency that has the authority to deal with these claims. It was sued, and for reasons that it considered adequate, it chose to settle them. Now, the city had a right to consultation. It was given that right. It participated in the lawsuit below. It had its say. But once the claim, once the state claims are settled, once the county, which is the agency that has authority to administer those claims, has said, we don't want to litigate anymore, we give up, I don't understand how the city has any authority to appeal that decision or to challenge it in any way. Well, because normally in a consent decree, there isn't going to be a finding of the disputed issues in the case. And there is only one reason why there is preemption of findings in this consent decree, and that's to effectively bar a legitimate State law challenge of this project by third parties. And that is the case. You could have gone to the superior court. You could have gone to the superior court and brought a writ of mandate. If you thought the county was doing things under the State environmental laws that it should not have, you could have gone to the State court. Well, Your Honor, I'm very glad you said that, because we did that. And what happened? They removed the case to Federal court, and the district court stated and made a finding in that decision that said that this appeal was going to have res judicata and collateral estoppel effect on the city's State law claims under CEQA challenging the project. Okay. So you did do that. You exercised it. We did do that. And that's, and we have that in the record. You exercised those rights, and it may be that, I mean, have you challenged the removal? Have we challenged? The removal. We challenged the removal. We made a motion for remand. It was denied by the district court. Then the CIMEX and the county made a motion for stay, and the district court made a ruling that ----  They made a stay ruling, Your Honor. Did you appeal that? Not yet, because we are waiting for the stay to lift. When that appeal comes, if it comes, we'll deal with that. But here we are reviewing the consent decree. The consent decree, it's a settlement. It's a settlement among all the parties, the plaintiffs, the United States, the company, and the county that have actual stake in this controversy, that have actual ---- I just don't understand how you can litigate these questions that you want to litigate in challenging a consent decree. I've never seen a consent decree challenge an appeal from a consent decree directly. Now, sometimes people come in later and challenge a consent decree in this application, but that's later. Well, Your Honor, there is limits. As broad as that discretion is for parties to settle, they cannot sit in private mediation and decide preemption issues. I would like the court ---- I'm sorry. Why not? Because the consent decrees are not supposed to have any binding effect on third parties. But that's a matter of State law. This is a matter of the county and the city and the State working out in their political processes. If they're not happy with the way the county is handling this, they can go to the legislature and pass a law that makes some other agency responsible, that gives the city authority to participate more directly. This is all questions of State law. As far as State law is concerned, the county has sole authority to dispose of these claims, and the county has been sued and the county has settled. The county documented repeatedly that it had to recirculate. There is only one environmental regulation here that is at issue. But they settled it. They settled it. They settled it. Because they are relying on a preemption finding that's erroneous as a matter of law. And I'm sure that when that is raised in the next election, the voters will throw the rascals out. If you think that they sold State law down the river, if they did an improper settlement, that's why we have a political process. But we're not in the political arena here. And I understand that, Your Honor. But what the city needs is the right, as you said, to be able to have a viable State law challenge under CEQA. And under this consent decree, all the court has to do is vacate the preemption findings in this consent decree. But why would you do that? The parties have settled. The parties, the agency which is granted by State law the authority to dispose of these claims has said, we give up. We agree. The State law has been complied with. They have, by the State legislature, been given the full authority to do that. Now, if you don't like it, you can go to Sacramento. And Sacramento might be able to change that very quickly. But that's a matter of State law, which is of relatively little interest to us. In every preemption decision that this Court has authored, the courts have gone through the analysis. Were they consent decrees? There was not with the particular panel in this reference, but there is Keith v. Volpe, which was a consent decree that had preemption. Is this an appeal from a consent decree? It was an appeal from a consent decree. It's a Ninth Circuit decision, and they said it cannot, consent decrees have some limits. They cannot abrogate State law. That had to do with a case. Unless the State law is preempted. That's correct, Your Honor. And this is what you want to talk about. I want to talk about preemption, because there is no preemption in this case. Who appealed in Keith v. Volpe? Who appealed it? It was a person who was affected by the consent decree where they were trying to put billboards up on I-105. And the consent decree had to do with prohibiting or controlling that. And there was a State statute that allowed the consent, excuse me, that allowed billboards. And the Court held that you could not abrogate State law even in a consent decree. So the preemption analysis here, there's one regulation, only one, that was in front of the Court, that is in front of the Court, about what is reasonable environmental regulation under the Granite Rock case. And that is whether the county should recirculate the traffic under CEQA. There is no way that is land use. There is no way that that is unreasonable environmental regulation. That's the only thing. Everything else that CIMEX has complained about, they had actually agreed to. They had agreed to the additional mitigation. Kennedy. I'm sorry. If I look at Keith v. Volpe, wasn't the consent decree entered in 1981? I'm sorry, Your Honor? The consent decree in Keith v. Volpe was entered in 1981. That was 1997. This was not an appeal from the approval of the consent decree. But it was a third party who was not a signatory who was affected by it. Subsequent application of a consent decree, third party comes in and challenges applications to it. It's perfectly fine. You might be able to do that down the road. But at this point, we're reviewing the approval of the consent decree. I don't understand how, when all the parties that have authority to deal with this have agreed to it, how we can do anything to appeal. Because if the preemption finding, which was not proper and is contained in the consent decree, if that is erroneous on your de novo review. You see, Your Honor, it keeps focusing on a consent decree. But you can't even get to the standard of review on consent decrees until you determine de novo that the preemption finding is correct. There is no standard of review. It's a settlement. It's just the parties have settled. There's nothing to review. It's a combination standard of review because it contains a preemption finding in the consent decree. I've never seen a case where there's been a direct appeal of a consent decree. Well, Your Honor, this is a case of first impression in many respects. And it doesn't mean that our position is wrong. It's our position is legally correct. There is a preemption finding in that consent decree. I know you think that, but I don't know how it can be. I will come back in five minutes. Okay. May it please the Court, Deborah Fox, on behalf of the county of Los Angeles, appellee here. You agree that the county has, is a State agency fully charged with implementing the State's environmental laws? Absolutely, yes. And you settled this case? We did. Do you think there's anything to appeal here, anything for us to consider? Well, I think that they have an opportunity to have an examination of the consent decree to see if it was a fair, reasonable, and equitable consent decree. I've never seen anything like this where, you know, I've seen decrees later challenged as happened in Keith, but I've never seen a situation where parties settle a case and there's no appeal. What's the point of settling a case if you're then going to have an appeal? I sort of don't get it. Well, certainly, and this is a particularly unusual situation in that there have been extensive amount of litigation, and the City of Santa Clarita is vehement against this particular project. I can tell. I saw all the briefs. That was evident, Your Honor. I would like to offer you a piece. Ms. Fox, would you direct yourself to the case cited by opposing counsel, Keith v. Volpe, and see and tell us why that case is distinguishable, if indeed it is. Thank you, Your Honor. It is very distinguishable. First off, it was a case that happened, was not an appeal of a consent decree. It was later on. A party was taking issue, went to the court, said, we want to put a billboard up on the Century Freeway. At that time, Judge Pragerson said ---- Just to make sure I remember the facts correctly, this was somebody who went in and sought a modification or sought an approval under an existing consent decree. Correct. Okay. Correct. So it goes back to the district court and says there is a consent decree in place. I think the consent decree might affect my ability to put up a billboard. Correct. Under State law. And Judge Pragerson said no. Judge Pragerson said no. They took that issue up. In the Keith v. Volpe case, there was no Federal law in play. There was no argument about Federal law, no arguments about preemption. So the case is markedly different from what is offered here. But in any event, Keith was ---- I mean, in answering Judge Baer's question, what I hear you saying is that was a challenge to the application of an existing consent decree. That is correct. Not an appeal from the approval of a consent decree. That is correct. And in that challenge itself, there was no issue of Federal law that came into play. There was no conflict between the Outdoor Advertising Act and any Federal law. And accordingly in that particular case, the billboard was allowed to be put up by the Central Freeway. Well, wait a minute. The Federals had given money to the State to build I-5. So there was Federal money in I-5. The Federals said we shouldn't have any billboards around here. And the State agreed with them. That was the basis of the consent decree. Then along came the gentleman who wanted to put a billboard up and said, oh, but I have a right to apply for a billboard to the California Department of Caltrans. Right? Why is that not the same as it is here? Here Santa Clarita is in the position of the billboard applicant and saying, we have a right to stop these trucks from coming in to the gravel pit. Well, in the particular, the Keith v. Volpe case, there was not any Federal issues at play there. While there was Federal money, there was no argument that there was any Federal law that was in conflict with the law regulating the billboards. Here we have the underlying preemption issue, which is about the issue of the land use designation of this mine in conflict with the State laws on environmental regulation and environmental protection and resource protection. If I might also offer that I think Keith v. Volpe needs to be read and reviewed in light of the case of lawyer v. the Department of Justice. It was not cited in the briefs, but after the reply was filed, I noted that case, which is a 1997 United States Supreme Court case at 521 U.S. 567. Have you notified us or the other side that you're going to rely on this case? I have not, Your Honor. That's bad practice, you know. Before you cite a case and rely on it, it's always a good idea not only to notify the Court, but to notify opposing parties. Thank you, Your Honor. I'll make sure and do so next time. In that particular case, it was a case dealing with the Florida legislature and redistricting. And the case has some, I think, important language in talking about the ability of the State to get the benefit of a settlement, to decide, to evaluate a settlement, and to not have to fully adjudicate issues. And that really is one of the underlying cruxes here, is the issue that the county of Los Angeles in its judgment did not want to have a full and complete adjudication on preemptively. You say that in Keith v. Volpe there was no Federal law in conflict, but there was a Federal administrative decision by the Federal Highway Building Authority that they didn't want any billboards on I-5, right? I'm not sure if there was a Federal decision that they didn't want any billboards. Well, that was part of the consent decree. They said, we will agree with you that there will be no buildings, no billboards on I-5. Right. It was simply a condition of the consent decree that they wanted the aesthetics of the without the billboards to be aesthetically displeasing to the neighbors. The Federal authorities in their great obeisance to environmental interests and concerns said no billboards. That was a Federal decision. So there was a Federal decision in conflict with Caltrans' ability to determine where billboards should go. I would not agree. I don't believe that there was a Federal law that was in conflict. It wasn't a Federal law. It was a Federal administrative decision. If you want money, California, no billboards. Right? Well, that may be factually correct. I know that the court did not discuss at all that there was any conflict between those two. And definitely here we have a conflict. The issue is, I mean, that was the key to the situation. I really was, I mean, I think you're going to have a hard time getting around Judge Baird's question because clearly there was Federal law involved or else you wouldn't have had a Federal consent decree. I mean, the real question is what you had there was a consent decree that operated and by its operation constrained other people's actions. This consent decree doesn't constrain anybody. What it does is what Santa Clarita's claim is, is it doesn't say that this decree ought to be approved, that the county ought to be allowed to enter into this consent decree. It's not a situation where they say we want to drive trucks or anything else, and this consent decree is standing in our way. This is not a situation where they're representing employees of the county and saying we want to speak out and this consent decree constrains us. This is a challenge to the approval process itself, unlike Keith, which was a case where you had a consent decree that by its operation impinged on other people's freedom of action. That's the difference between the two cases, it seems to me. I think you're absolutely correct. Let me try to shift the focus about six degrees here. Are private parties in a civil dispute free to settle a case by a consent decree that violates state law? I think in this particular case when you have a- I'm not talking about this particular case. I'm talking about as an abstract legal proposition. Are private parties free to enter into a consent decree in Federal district court that violates state law? I think they can if they make sufficient findings to justify the conflict and to support the consent decree. So they can if there's preemption? I think they can in preemption cases. What if there's no preemption? What if the consent decree caused a usurious interest rate? You know, the consent decree, it's not this kind of decree. It's a consent decree involving the payment of money, and the decree provides for an interest rate that violates state law. Are the parties free to do that? If there is a Federal law that is in conflict, I suppose they could. The example that comes more to mind is- I mean, they suffer the consequences. When they enter into an agreement that carries a usurious interest rate, there's often consequences. They suffer the consequences? As a matter of state law. Sometimes you lose your interest. Sometimes you lose your principle. So there are state law consequences of entering into agreements that violate certain state laws. But nobody's going to stop you from doing it. Just like nobody stops you from entering into a contract that's usurious, right? What's the teaching of Granite Rock? I think the teaching of Granite Rock is that if you have an issue of facial preemption, that was the issue there in Granite Rock. And the Granite Rock really leaves us in the gray area when you have the issue of how far environmental regulation can go until it is improper land use redesignation. And that was really the rub and the issue that was confronting the county of where that line was. If I might yield the podium, we had agreed to split our time evenly, and perhaps I might yield to the Department of Justice. Thank you. Good morning. May it please the Court, Edward Gelderman for the United States. I'd start off by answering what I believe, based on my recollection, is the facts and circumstances in Keith v. Volpe. In that case, I believe it started out as a NEPA challenge. It might have been the Department of Transportation. I always hesitate to talk about a case I haven't read in the last couple of days. But my recollection is that some environmental groups sued under NEPA, challenging the inaccuracy of mitigation. And that resulted in a consent decree that resolved the litigation, in which the environmental groups demanded that the freeway be a landscape freeway with no billboards. And then that brought into the interplay of state law with the consent decree issued in federal court, but there weren't any overriding issues in that consent decree that conflicted with. Do you agree with Judge Kaczynski's proposition that there's nothing before us, because once it's settled, it's over, it's gone, we don't care about state law or anybody else? I agree with that 99 percent. The only thing that gives me pause is if you look at this Court's prior order granting intervention to the city, I believe there may be language in there, and if I'm wrong and I retract what I'm about to say, there may be language saying that they have the limited opportunity to oppose the decree and appeal its issuance. I don't know what that means. They did say that, but I have no idea why they have authority to say that. That was not a case involving an appeal. That was an issue that's presented to us here, so that was not an issue presented to that panel. That's correct, Your Honor. It was sort of musing about the consequences of allowing intervention. All that was presented to that panel was the question of whether they should allow interventions of right or not, and they held that intervention of right is authorized. And as I read the order, what they said, it's authorized to vindicate the right of consultation that the city of Santa Clarita has under state law. And I suppose if there were any challenge to the consultation process here on appeal, I would say, well, maybe that's included in it somehow. But it's the – I'm not sure, maybe. But the statement, sort of the broad statement that they can challenge and they have a right to appeal, not even dicta, it's rumination. It's sort of a guess about the issues to be presented in a future phase of the litigation. So I did see that, but I wasn't telling. So is it your position, then, that the city was empowered to challenge the consent decree in district court? No, I believe, based on the reading of this court's prior order, I mean, that's the authority. But not to appeal it? I thought – do you have the order in front of me? Does it say they can appeal? It does say that they can appeal. That's what they said. But whether that's a holding or not is something for us to decide. Precisely, Your Honor. I don't see how it can be a holding, since that's not something that was then at issue before the panel. To clarify my response to Judge Trott's question, it is they had whatever authority that was granted by the prior court. So assume that we should decide that they can appeal. Then what's your position on the merits of the appeal? Okay. Then the merits of the appeal are not the merits of the underlying litigation. They're the merits of whether or not this decree is fair, reasonable, and adequate, consistent with law and public policy. And that's reviewed by this court, should it get into it, under an abuse of discretion standard. Are you aware of any case where there's been a direct appeal from a – Well – – but where, for example, a consent decree and then there's an appeal of the issues? I've never heard of such a case. I've seen cases, I believe, in which part of the issues have been settled by way of a consent decree, and there are other issues that aren't. I've also – I'm not sure – The things that are not settled are then subject to decision by a court, including decision on appeal. Right. But once there is a consent decree, that's a settlement of the issues. Right. And I've never seen a case where after the parties settle the issues, somebody comes along and says we'll appeal anyway. Except in class actions where you have dissenting members who didn't join the class who then come forward on appeal and try to torpedo it. That's right. That's right. Now, the only thing that gives me pause with respect to answering this unequivocally is there are – I mean, these standards got developed somewhere. And so – and these standards apply only to challenges to the approval of a decree, not challenges to the consent decree when it's already in existence and there's either a proposed modification, enforcement of the decree, or some issue that calls for its interpretation. And those types of situations are clearly within the district courts and this Court's jurisdiction to resolve by parties who are allegedly harmed by – Mr. Gilderman, let's suppose that your stipulation regarding preemption is – just for a moment – is not good. Do you agree that there are three elements of new information which would have required a recirculation of the draft EIR? No, Your Honor. Would you deal with that? Well, do you want me to deal specifically with the three elements? Yes. Okay. As I recall, there was an objection based on the California Department of Fish and Game. This was after the record in the EIR process had closed. I believe there had been consultation between the city and the Department of Fish and Game and some other agencies to try to get these agencies to generate letters that would cause the county to demand recirculation and coincidentally further delay the process. The letter had to do with the discovery of an Arroyo Toad tadpole on the project site just before this project was scheduled to be approved. Why was that not new information which would require recirculation? Well, there's a certain – that has to reach a certain level of environmental significance, Your Honor. And what happened was the U.S. Fish and Wildlife Service examined the discovery of that toad. There was a consultation between the Bureau of Land Management and the U.S. Fish and Wildlife Service, and that resulted in a biological opinion which found that based on a prior biological opinion that pertained to an unarmored three-spined stickleback, all the mitigation that was in that prior biological opinion was adequate to protect the – So it was the equivalent of a finding of no significant impact. Yes. It was – it didn't rise to the level of that which would trigger supplemental – What about these emissions that the counsel started off her argument with? The – Diesel emissions. Diesel emissions. This, I understand, was another after-the-fact letter that the city was able to get this agency to generate, and it was based on a revised methodology having to do with diesel emissions, and it applied to arterial highways and local roads, neither of which pertains to Soledad Canyon Road. Arterial highways? Arterial highways and local roads. Neither of which Soledad Canyon qualifies as under the – What does Soledad Canyon qualify as? I believe it's just a – I believe it's a major highway, and hopefully to the extent that if I'm getting anything incorrect – What about the tonnage cap? I'm sorry? What about the tonnage cap? The tonnage cap is just really a red herring because that – there was no – Not an acceleration. It's not an acceleration. It is – there was no limits on the yearly production on this project under either the EIS and the record of decision that BLM approved and that the county was poised to approve, and it only was put in there as a result of, you know, this give and take on the mediation. The county wanted this as a mitigation measure. The project was evaluated under NEPA under certain ranges of production, and if CEMEX was free to go above that, and if it did, it would have triggered further NEPA analysis, but there weren't any absolute limitations on the project imposed by – Are the NEPA issues before us anyway? No, they're not, Your Honor. That's a different lawsuit. That's a completely different lawsuit. That lawsuit hadn't even been filed, and the briefs in this case had been filed. So it's – although the project – BLM had approved the project three years ago. The city waited until this action went forward and a number of other actions was forward before it even initiated that suit. And, you know, because I think that had – had they already challenged – What do you mean? Was that lawsuit initiated yet or not? It was initiated in December of 2004. And it's now where? It has just reached summary judgment. The court has issued an opinion finding the city's NEPA objections to be without merit, including all these issues that Judge Bea just referred to. But in any case, those are issues – In that case – Federal issues will be decided. Exactly, Your Honor. There will be another – And I thought there was a third lawsuit as well. There is. The city then separated Endangered Species Act objections to the project, even though they're usually all tried in one case, and they had another case in the central district. That case has been resolved adversely to the city, and that case will likely be coming up to this court. And that's all before the same district judge? Is Judge Stavizian still there? Yes. There were some transfers because of the related nature of the project and the judge's familiarity with – Is Judge Stavizian still there? He is, Your Honor. I thought he was retiring or had retired or – We had heard that. We're not sure what his plans are. But anyway – He's still there. As of now, he is still there handling the cases as well as – Yes. Okay. On the bonus front – Actually, you're more than on bonus time. Right. I was trying to give CEMEX a chance to just address – We'll give CEMEX a couple of minutes. Thank you, Your Honor. If they choose to take it. Your Honor, Patricia Brody for CEMEX, and I will be very brief. I just wanted to respond to some of the points that have been raised during the prior questioning. First of all, we agree with Judge Kaczynski that the issue before the Court here is the approval of the consent decree, which is subject to an abuse of discretion standard. The interpretation of the consent decree as it's applied in other situations will be decided in those other forums. And as the Courts recognize, there is an existing NEPA challenge, which the City of Santa Clarita has made, which has been litigated on the merits in summary judgment entered. What do you think about all those First Amendment claims raised by the States and it's in Meeksburg? Your Honor, we don't believe – if the State had actually read the consent decree in detail, and it's very voluminous, and it's part of the excerpts of record which we submitted, it would see in there that what the county does is it retains its powers and its police powers with regard to future conduct after the permit is issued and the mine becomes operational. There's nothing in there which precludes anybody from exercising any rights that they have to object to the process and the mine as it's ongoing. If Your Honor is referring to a portion of the consent decree which the City has said which somehow will cause county employees not to speak, I can address that. There was a – during the consent decree negotiation process, the county in this nine-months mediation involving everybody was reaching agreement on issues. At the same time the county was doing that, there were portions of the county which were acting to undermine the settlement which the rest of the county was reaching. It was that concern that the county could not with one hand be settling with us, and the other hand trying to undo the settlement, that caused the language in the consent decree that says that the county cannot do that kind of conduct. You can't, on the one hand, be trying to negotiate with us, and the other hand trying to undermine the settlement. Speak with one voice. Speak with one voice if that's what you're going to do. It's not intended to, and it would not be interpreted to apply after the permit has been issued to whatever anybody wants to exercise in terms of this project. You know, in addition to the NEPA suit and the ESA suit, there's the CEQA suit, and actually in that case what's happened is Judge Cherisian has not said that all issues in the consent decree will determine what's happened there. He says let's get the consent decree affirmed, come back, and then in Judge Kaczynski's analysis we'll analyze the application of the consent decree to your CEQA claims and see what happens. So the CEQA claim is out there. The Center for Biological Diversity, one of the appellants, has a claim out there. So there is no way, and in fact, Your Honor, most of the amicus who have submitted papers here have been active participants in the process. They were appellants in the IBLA. They know how to get their views across. There are ample forums for them to do that. We have no question that they have found those forums and they will continue to find those forums. Roberts. Does the validity of the consent decree depend in any way on preemption? Your Honor, the ---- In part. In part. And what? Go ahead. Because what happened was, is that the parties agreed in the consent decree that further review would be preempted. And what ---- By virtue of? By virtue of the fact that there is a body of law which says that not field preemption, but conflict preemption. Right. And what it says is that you can't have an endless State process which will never be concluded, which has the effect of not ever issuing a permit. So at some point enough is enough. Enough is enough. And we cited cases on that, Your Honor. And those cases were before the district court for years, because after the complaint was filed, there were challenges, 12B6 challenges. So the Court was well familiar with the law which says that an ongoing State process, if it never concludes, amounts to a violation of the federal law. But you don't have to decide whether that's a valid claim. I mean, the county had this claim brought against it and chose to settle it. Yes. It's a nothing survival claim. If, you know, the fact that if litigated to its conclusion, it might be resolved in favor of the county, it's neither here nor there. They settled. They said we think this is a claim that has some merit. We could win. We might lose. We're going to settle it. The county evaluated the specter of preemption when it decided that the appropriate thing to do was to conclude that after 12 years of environmental review, it really was enough was enough. And that's the basis for the parties. Well, we don't have to agree that enough's enough. All we have to agree is that there was a viable claim there that enough's enough, and that county reasonably said, well, we might lose on this, and so we're going to settle it. And the substantial and the abuse of discretion standard only requires you to assume when we have anything to review at all. Well, what the abuse of discretion standard does is it just requires you to make sure that the district court, when it reviewed and approved the provisions of the consent decree, did so based on an evidentiary and reasonable legal basis. Not that there was an adjudication, but that in looking at the terms of the consent decree, was the agreement of the parties reasonable in terms of the facts that were found by the court and they were reached by the court. It's like a guilty plea when finding that there's a factual basis for the guilty plea. Well, okay. But, yeah, I just want to address one point, which is you had asked if we were aware of any case where a consent decree was appealed directly. And there is one. There's a U.S. v. Oregon, we believe, is one of the cases where a consent decree was appealed directly. And it's been cited by all the parties. And it was recognized by Judge Terizian because it was invoked by the city during the argument before him in connection with the consent decree. And they said, U.S. v. Oregon says that if you're going to have a consent decree that impacts third parties, you can't do what it is that the settling parties have asked you to do. And the judge read U.S. v. Oregon carefully and said, no, U.S. v. Oregon, if you're going to have any impact on third parties, you need to look at it to make sure it's a reasonable resolution. It need not be the best resolution, but it's a reasonable resolution. And that is the standard that Judge Terizian knew that he had to meet and that he did meet. And, Your Honor, just reading from U.S. v. Oregon in terms of a consent decree, it says, and this is at page 581, and U.S. v. Oregon is 913, Fed 2nd, 577. And at page 581, the Court says, however, a consent decree need not impose all the obligations authorized by law. The consent decree will not be vacated merely because it is legally erroneous. Rather, the Court's approval is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice. The Court need only be satisfied that the decree represents a reasonable, factual, and legal determination. So that's the standard that the Ninth Circuit has used when it's been looking at direct appeals from consent decrees. And to answer your question, Your Honor, about Volpe, Volpe was, Keith v. Volpe, that was the case, again, as in Judge Terizianski's matrix. It wasn't an approval of a consent decree. It was a later challenge to a consent decree. And the action there and the opinion was that you couldn't conclude that the action would be precluded by Federal law without some findings. And the point there was that the Court said there were no findings that would support a conclusion, a preemption. They did not discuss what type of findings would be necessary in that connection. In that case. Thank you. Thank you, Your Honor. Okay. We have left some time for rebuttal. Thank you, Your Honor. Well, I think the key that we've heard is that they, the appellees concede that the validity of this consent decree depends on the preemption finding. That was what the Court asked, and they admitted it. So it becomes a different issue. I'm sorry. What do you think that means? That means that it's de novo review, and you can't even reach the fact that it's a consent decree. You mean we have to agree that there was preemption? Yes. You do have to agree. I didn't hear them say that. And I don't see where we could possibly agree to that. Assuming there's something to appeal and you can appeal, why isn't the only issue, was there a viable claim? Was this an issue of reasonable dispute that they could settle? And if there was a reasonable dispute on this point that they could settle, that's the end of the matter. Why isn't that the standard? Because they're putting that preemption finding in the consent decree for an improper purpose, which is to bar third parties from challenging under State law this project. That's why. And Your Honor keeps going back to this issue. I'm sorry. I don't know what you said. What's improper about that? They are the parties that are charged by State law with administering the State environmental laws. This is the agency. And they have a number of challenges, including federal preemption claims. And they say, look, some of these claims look pretty serious to us. We're going to settle them. We're going to consent, enter a consent decree. Why isn't this court looks at them and says, yes, that's right, these are closely disputed claims. Why did they put the preemption finding in the consent decree? If Your Honor is correct, you're absolutely right, Your Honor. They can sit there and settle whatever they want. Why did they put a preemption finding in the consent decree? Why is it that they're --- Why can't they settle whatever they want? Because it's to bind nonparties. To bind nonparties in what respect? You're trying to stop this project cold? No. We are trying to get mitigations that would reduce the size and scope. And the district court in our CEQA case, we have all of this in front of the court and our request for judicial notice. When he stayed the CEQA action, which doesn't say one thing in our complaint about state law, it's a state law claim, got removed to federal court, and he said an affirmance of some issues in this CMEX Ninth Circuit appeal could subject present claims to race, judicata, and or collateral estoppel. Or, at the very least, would narrow the present claim. Now, why, even if you want to rely on the reasonable and fair standard, how is that reasonable and fair? There is -- Why is it not reasonable and fair? Because we are trying to bring a state law case, and they are using the consent decree. We get the legislature to give you authority to administer these claims. It didn't. It gave the county authority. That's the beginning and the end of the matter. If you wanted to change state law and wanted to have cities have more authority in these things, have an actual decision-making authority, legislature would have done so. You know, they're up there in Sacramento. You can go up there today and get them to change the law. We are not asking for decision-making authority. We're asking for our rights under CEQA. And that's the problem with the consent decree. Why did they go? You've got a CEQA lawsuit. That's a different case. But that's the -- Just like you've got a NEPA lawsuit and just like you've got an ESA lawsuit. That's a different case for a different day. But the district court is linking them. They're inexorably linked because the district court made that finding that there's going to be race, judicata effect. And the thing is, Your Honor, there is absolutely authority for a position that we can appeal a consent decree, first of all, because the Ninth Circuit said we could. Secondly, there's the officers for justice case. Is the finding of race, judicata effect not appealable? In the CEQA case, it would be. Right. But why do we – all that has to happen is that the Court here should simply vacate the preemption findings in that consent decree. That's what needs to happen here. That is the fair and reasonable thing to do to third parties. So you're asking us to leave it intact entirely except take out the preemptions? Well, I think that the Court only has two choices. They would affirm or vacate. What we're asking is vacating the consent decree with direction. Sending it back with instructions to take out the preemption. Exactly. And otherwise leave it completely intact. Well, then I think we have to – then we have to – the parties will have to look at that agreement, because there's some very strange severability language in the consent decree. In the time remaining, do you have any response to the Arroyo Toad, the diesel admission, and the acceleration argument made by the other side? Well, Your Honor, those agencies – Recirculation? Yes, absolutely. Recirculation. And – Do you have any response to the argument that there was no need for recirculation? But I think that when they're talking about cancer risk, I think when they're talking about effects on the species, the CEQA standard is that substantial new information. There cannot be a serious contention that when you have two state agencies and the AQMD saying that we need recirculation, the Court doesn't even have to listen to the city on that. It's these agencies that are saying it. It's not one. It's not two. It's three. It's three that are saying this is significant. We need to – your cancer – your risk of cancer modeling is wrong. So you're saying any time a state agency says X, there must be recirculation, there's no judgment, no discretion on the part of the people? No. There is judgment and discretion. They exercised it, and they tell us it was reasonable based on the circumstances. You disagree? Well, I think that – I don't think that under the standard of review that it amounts to a proper exercise of discretion. Thank you. Is there any other questions? Thank you, Your Honor. Thank you. Here's our new statute.
judges: Kozinski, Trott, Bea